FILED
2014 Dec-05  PM 04:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

# Exhibit A

| State of Alabama<br>Unified Judicial System<br><br>Form ARCiv-93   Rev.5/99 | **COVER SHEET**<br>**CIRCUIT COURT - CIVIL CASE**<br>(Not For Domestic Relations Cases) | Case Number:<br>**01-CV-201**<br>Date of Filing:<br>10/31/2014 | ELECTRONICALLY FILED<br>10/31/2014 8:36 AM<br>01-CV-2014-904547.00<br>CIRCUIT COURT OF<br>JEFFERSON COUNTY, ALABAMA<br>ANNE-MARIE ADAMS, CLERK |

## GENERAL INFORMATION

### IN THE CIRCUIT OF JEFFERSON COUNTY, ALABAMA
### FORSYTH CONSULTING, INC. v. ZOE'S KITCHEN, INC. (ZOE'S KITCHEN)

**First Plaintiff:** ☑ Business  ☐ Individual          **First Defendant:** ☑ Business  ☐ Individual
                    ☐ Government ☐ Other                                    ☐ Government ☐ Other

## NATURE OF SUIT:

**TORTS: PERSONAL INJURY**

☐ WDEA - Wrongful Death
☐ TONG - Negligence: General
☐ TOMV - Negligence: Motor Vehicle
☐ TOWA - Wantonnes
☐ TOPL - Product Liability/AEMLD
☐ TOMM - Malpractice-Medical
☐ TOLM - Malpractice-Legal
☐ TOOM - Malpractice-Other
☐ TBFM - Fraud/Bad Faith/Misrepresentation
☐ TOXX - Other: _____

**TORTS: PERSONAL INJURY**

☐ TOPE - Personal Property
☐ TORE - Real Property

**OTHER CIVIL FILINGS**

☐ ABAN - Abandoned Automobile
☐ ACCT - Account & Nonmortgage
☐ APAA - Administrative Agency Appeal
☐ ADPA - Administrative Procedure Act
☐ ANPS - Adults in Need of Protective Services

**OTHER CIVIL FILINGS  (cont'd)**

☐ MSXX - Birth/Death Certificate Modification/Bond Forfeiture
         Appeal/Enforcement of Agency Subpoena/Petition to
         Preserve
☐ CVRT - Civil Rights
☐ COND - Condemnation/Eminent Domain/Right-of-Way
☐ CTMP - Contempt of Court
☑ CONT - Contract/Ejectment/Writ of Seizure
☐ TOCN - Conversion
☐ EQND - Equity Non-Damages Actions/Declaratory
         Judgment/Injunction Election Contest/Quiet Title/Sale For
         Division
☐ CVUD - Eviction Appeal/Unlawfyul Detainer
☐ FORJ - Foreign Judgment
☐ FORF - Fruits of Crime Forfeiture
☐ MSHC - Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
☐ PFAB - Protection From Abuse
☐ FELA - Railroad/Seaman (FELA)
☐ RPRO - Real Property
☐ WTEG - Will/Trust/Estate/Guardianship/Conservatorship
☐ COMP - Workers' Compensation
☐ CVXX - Miscellaneous Circuit Civil Case

**ORIGIN:**   F ☑ INITIAL FILING       A ☐ APPEAL FROM          O ☐ OTHER
                                              DISTRICT COURT

           R ☐ REMANDED            T ☐ TRANSFERRED FROM       _____
                                              OTHER CIRCUIT COURT

**HAS JURY TRIAL BEEN DEMANDED?**     ☐ Yes  ☑ No

**RELIEF REQUESTED:**     ☑ MONETARY AWARD REQUESTED   ☐ NO MONETARY AWARD REQUESTED

**ATTORNEY CODE:**   BEA004        10/31/2014 8:36:13 AM        /s/ MICHAEL KEVIN BEARD

**MEDIATION REQUESTED:**     ☐ Yes  ☐ No  ☑ Undecided

ELECTRONICALLY FILED
10/31/2014 8:36 AM
01-CV-2014-904547.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

| | |
|---|---|
| **FORSYTH CONSULTING, INC.,**<br>a corporation,<br><br>    *Plaintiff,*<br><br>v.<br><br>**ZOE'S KITCHEN, INC.,** a corporation,<br><br>    *Defendant.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   CIVIL ACTION NO.: _____ ___ |

## COMPLAINT

### I. PARTIES

1.      Forsyth Consulting, Inc., (hereinafter "Forsyth") is an Alabama corporation with its principal place of business in Jefferson County, Alabama.  Forsyth provides foreground music services, customized message production and design, installation and service of commercial audio and video systems.

2.      Zoe's Kitchen, Inc. (Zoës Kitchen) (hereinafter "Zoës") is a publicly-traded foreign corporation headquartered in Plano, Texas.  Zoës is a modern fast-casual restaurant chain featuring Mediterranean-inspired food.  At all times material hereto, Zoës did business in Jefferson County, Alabama.

### II. FACTUAL ALLEGATIONS

3.      On January 3, 2009, Zoës and Forsyth entered into a Foreground Music Services Agreement (hereinafter "the Contract") whereby Forsyth agreed to provide two (2) zones of digital internet controlled music service, referred to as "Company Program Service," to all Zoës locations in return for annual payments by Zoës of $960.00 per location, payable upfront each year during the term of the Contract. *See* Exhibit A, attached hereto.

4.    The Contract required Forsyth to provide copyrighted music and internet based control of all programming features including all updates, training and custom programming assistance, along with the insertion of Zoës provided WAV file advertisements.  The Contract also required any locations opened by Zoës to install the Company Program Service, thus permitting Forsyth to provide proprietary pricing of the Company Program Service. *See id.*

5.    The Contract became effective on March 1, 2009, when Forsyth began providing the Company Program Service to the Zoës establishment located at 2931 Second Avenue, Birmingham, Alabama. *See id.*  Thereafter, Zoës opened at least 104 additional locations that were added to the Contract.  Accordingly, Forsyth provided the Company Program Service to each of the added locations.

6.    Paragraph 4 of the Contract – often referred to as an "evergreen" clause – specified that it would "remain in effect for successive sixty (60) month periods unless terminated by either party at the end of any such period by written notice sent to the other by registered mail not later than ninety (90) days prior to the expiration thereof." *See id.*  As a result, the Contract's initial 60-month period expired on February 28, 2014, thus making November 30, 2013 the last day of the 90-day period in which either party could terminate the Contract by written notice.  At no time on or before November 30, 2013 did either party give written notice of the termination of the Contract, nor did Forsyth waive the registered mail and timeliness termination requirements.  Thus, by operation of the evergreen clause, the Contract automatically renewed for a second 60-month period, ending on February 28, 2019.

7.    On January 2, 2014, Jason Morgan, Zoës' Chief Financial Officer, signed a December 16, 2013 revision to Addendum A of the Contract, which added several new Zoës locations to the Contract.

2

8.     On February 3, 2014, Forsyth received an e-mail and attached letter from Rachel Phillips-Luther (hereinafter "Phillips-Luther"), Zoës' Vice President of Marketing, formally terminating the Contract between Zoës and Forsyth.  The e-mail and attached letter were the only written notice of termination that Forsyth received from Zoës.  Acknowledging the Contract's requirement of written termination, the e-mail asked Forsyth to "accept the attached letter as formal notice of termination of services."  According to the attached letter, Zoës had identified an alternative music service provider that would "best suit [its] holistic needs in the coming years."  The letter also stated that Zoës would continue to add locations and renew restaurants with Forsyth through March 31, 2014 (the end of the Contract's initial 60-month period, according to Zoës), but new locations would not be added after that date.  Finally, the letter stated that because locations currently serviced by Forsyth had various renewal dates, Zoës had included "a document outlining when current locations [would] roll with the new service provider."

9.     On February 4, 2014, Kevin Forsyth, the President of Forsyth, responded to the February 3, 2014 communication from Zoës by sending Phillips-Luther an e-mail and attached letter expressing Forsyth's surprise at Zoës' early termination of music services and stating its position that the Contract had already renewed for a new 60-month period, by operation of the evergreen clause.  The letter confirmed that because many Zoës locations had various commencement dates, Forsyth was obligated to service all existing and future locations through February 28, 2019.

10.     Having received no response to its February 4, 2014 correspondence, Forsyth sent Phillips-Luther a second letter, via e-mail and Federal Express overnight delivery, dated February 11, 2014, stating its intent to fulfill the renewed Contract and indicating its presumption

3

that Zoës would do the same.  Forsyth enclosed an Addendum for Zoës' signature, which added

several new Zoës locations to the Contract.

11.     Having received no response to its February 4 and February 11, 2014

correspondence to Zoës, Forsyth obtained legal counsel from attorney Bradley Mayhew

(hereinafter "Mayhew") of Butler Snow, LLP in Birmingham, Alabama.  On March 25, 2014,

Mayhew wrote Zoës a letter, a copy of which is attached hereto as Exhibit B and incorporated

herein by reference.  In addition to outlining Zoës' numerous breaches of the Contract,

Mayhew's letter demanded that Zoës reverse its course and honor the renewed Contract,

otherwise Forsyth would seek the liquidated damages and attorneys' fees due to it under

paragraphs 6 and 7 of the Contract. *See* Exhibit B.

### III. CAUSES OF ACTION

### COUNT ONE: Breach of Contract – Evergreen Clause

12.     Plaintiff re-adopts and re-alleges paragraphs 1 through 11 above.

13.     As detailed above, Forsyth and Zoës entered into an agreement in which Zoës

would pay Forsyth for foreground music service.  More specifically, on or about January 3,

2009, Zoës and Forsyth entered into a Contract, scheduled to commence on March 1, 2009, in

which Zoës agreed to pay Forsyth to provide digital internet controlled music service at each

Zoës location listed on the contract's initial addendum and all future locations added to the

contract.

14.     Zoës breached the terms and conditions of the Contract, particularly the evergreen

clause in paragraph 4, by improperly terminating the Contract through an e-mail and attached

letter sent to Forsyth on February 3, 2014, rather than by written notice by registered mail sent to

Forsyth on or before November 30, 2013.

15.     Forsyth performed all conditions and promises required to be performed in accordance with the terms and conditions of the initial 60-month period of the Contract, ending on February 28, 2014.  However, Zoës improper termination of the Contract prevented Forsyth from performing all conditions and promises required to be performed in accordance with the terms and conditions of the renewed 60-month period of the Contract, ending on February 28, 2019.

16.     As a proximate result of the above-described breach of contract, Forsyth was caused to suffer damages in excess of $500,000.00 (five hundred thousand dollars).

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory and punitive damages, plus interest and all costs of this proceeding.

## COUNT TWO: Breach of Contract

17.     Plaintiff re-adopts and re-alleges paragraphs 1 through 16 above.

18.     As detailed above, Forsyth and Zoës entered into an agreement in which Zoës would pay Forsyth for foreground music service.  More specifically, on or about January 3, 2009, Zoës and Forsyth entered into a Contract, scheduled to commence on March 1, 2009, in which Zoës agreed to pay Forsyth to provide digital internet controlled music service at each Zoës location listed on the contract's initial addendum and all future locations added to the contract.

19.     Zoës breached the terms and conditions of the Contract by failing to pay Forsyth for foreground music service and equipment and freight expenses invoiced to Zoës prior to February 28, 2014, the expiration date of the initial 60-month period of the Contract.

20.     As a proximate result of the above-described breach of contract, Forsyth was caused to suffer damages in excess of $3,700.00 (three thousand seven hundred dollars).

5

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory and punitive damages, plus interest and all costs of this proceeding.

Respectfully submitted,

*/s/ Michael K. Beard*
Michael K. Beard (BEA004)
(ASB-6978-D67M)
*/s/ Jane F. Mauzy*
Jane F. Mauzy (MAU017)
(ASB-6721-N56M)
MARSH, RICKARD & BRYAN, P.C.
800 Shades Creek Parkway
Suite 600-D
Birmingham, Alabama 35209
Telephone:    (205) 879-1981
Facsimile:    (205) 879-1986
E-mail:       mbeard@mrblaw.com
              jmauzy@mrblaw.com

*Attorneys for Plaintiff Forsyth Consulting, Inc.*

**PLAINTIFF'S ADDRESS:**

**FORSYTH CONSULTING, INC.**
Kevin T. Forsyth, President
P.O. Box 530728
Birmingham, AL 35253-0728


**PLEASE SERVE DEFENDANT BY CERTIFIED MAIL AS FOLLOWS:**

**ZOE'S KITCHEN, INC. (ZOËS KITCHEN)**
c/o C T Corporation System, Registered Agent
1999 Bryan Street
Suite 900
Dallas, TX 75201-3136

        and

**ZOE'S KITCHEN, INC. (ZOËS KITCHEN)**
c/o Jason Morgan, Chief Financial Officer
5700 Granite Parkway
Granite Park Building #2, Suite 455
Plano, TX 75024



ELECTRONICALLY FILED
10/31/2014 8:36 AM
01-CV-2014-904547.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

# FOREGROUND MUSIC SERVICES AGREEMENT

THIS AGREEMENT is made this **3RD** day of **JANUARY, 2009** between **FORSYTH CONSULTING, INC.** an **ALABAMA** corporation, with offices located at **3332 OLD MONTGOMERY HIGHWAY, SUITE 216 - BIRMINGHAM, ALABAMA 35209** (hereinafter called (COMPANY) and **ZOE'S KITCHEN, INC.** an ALABAMA corporation, the owner and operator of **(LOCATIONS SHOWN ON ADDENDUM A ATTACHED)** located at **2931 SECOND AVENUE SOUTH - BIRMINGHAM, ALABAMA 35233** Phone Number **(205) 414-9920** (hereinafter called SUBSCRIBER).

### WHEREIN IT IS MUTUALLY AGREED:

1. COMPANY hereby agrees to make available to SUBSCRIBER, at the above designated premises, the COMPANY PROGRAM SERVICE as it may from time to time be constituted and at the times furnished. SUBSCRIBER agrees to and does hereby accept the COMPANY PROGRAM SERVICE as made available and as it may from time to time be constituted and at the times furnished.

2. COMPANY PROGRAM SERVICE TO BE PROVIDED:
**DIGITAL INTERNET CONTROLLED MUSIC SERVICE (2 ZONES) PROVIDED THROUGH SUBSCRIBER OWNED DIGITAL MUSIC SERVER AND SPEAKER SYSTEM. COMPANY PROGRAM SERVICE INCLUDES COPYRIGHTED MUSIC, INTERNET BASED CONTROL OF ALL PROGRAMMING FEATURES INCLUDING ALL FUTURE UPDATES, TRAINING, AND CUSTOM PROGRAMMING ASSISTANCE ALONG WITH INSERTION OF SUBSCRIBER PROVIDED WAV FILE ADS. ANY LOCATIONS OPENED BY SUBSCRIBER WILL INSTALL COMPANY PROGRAM SERVICE PERMITTING COMPANY TO PROVIDE PROPRIETARY PRICING OF COMPANY PROGRAM SERVICE.**

3. SUBSCRIBER hereby agrees to pay to COMPANY, at its office located at 3332 OLD MONTGOMERY HIGHWAY, SUITE 216 – BIRMINGHAM, ALABAMA 35209, the following:
A. An annual charge of **$ 960.00 PER LOCATION** payable hereof at the beginning of each year during the term of this Agreement.
B. SUBSCRIBER will promptly pay to COMPANY, upon receipt of invoice therefore, any Federal, State, municipal or other taxes, excises, fees (including Franchise and performance Fees,), or other imposts hereafter levied or increased upon or hereafter required to be collected by COMPANY with respect to the rendition, reception or use of the COMPANY PROGRAM SERVICE under this Agreement.

4. This Agreement shall become effective on the commencement date indicated below and shall remain in effect for successive sixty (60) month periods unless terminated by either party at the end of any such period by written notice sent to the other by registered mail not later than ninety (90) days prior to the expiration thereof. The commencement date of this Agreement shall be the commencement date written below or the initial date, for which COMPANY PROGRAM SERVICE is billed hereunder, whichever is later.

5. INTERRUPTION OF SERVICE: In the event that the COMPANY PROGRAM SERVICE is not furnished by COMPANY to SUBSCRIBER because of strike, mechanical failure, the elements, act of nature, government rulings or regulations, emergency, or other causes in the public interest or for any reason, similar or dissimilar, beyond the control of COMPANY, same shall not be deemed to be a breach of this Agreement and COMPANY shall not be liable for any loss, damage or delay caused, thereby. COMPANY agrees that if the said COMPANY PROGRAM SERVICE is not furnished by it to SUBSCRIBER for twenty-four (24) consecutive hours and SUBSCRIBER gives COMPANY notice of such interruption in writing prior to the end of the day during which said interruption commences, COMPANY will credit SUBSCRIBER's account with an amount equal to one day's equivalent billing of the annual COMPANY PROGRAM SERVICE charge for each consecutive twenty-four (24) hour period during which such interruption continues, which shall constitute COMPANY'S sole obligation to SUBSCRIBER. Such credit shall not be given if such interruption results from any negligence or other fault of SUBSCRIBER or from a breach by SUBSCRIBER of any term or condition of this Agreement.

6. ADDITIONAL CANCELLATION TERMS AND CONDITIONS: If SUBSCRIBER vacates or disposes of the designated premises or discontinues its business there, or discontinues the COMPANY PROGRAM SERVICE, or default in any payment hereunder or violate any other term or condition of this Agreement, or enter into any arrangement or composition with its creditors, or if any levy or attachment is made or any proceeding in bankruptcy or insolvency is instituted by or against SUBSCRIBER or its business or property, then and in such event this Agreement may be terminated at the option of COMPANY, without requirement for any other than informal notice, and SUBSCRIBER agrees to pay to COMPANY as liquidated damages seventy-five (75%) of the amount of all unaccrued monthly payments under the original term of this Agreement, or the then current renewal term hereof. Liquidated damages to be in addition to any sums already due for services rendered at or prior to the date of breach. All said sums shall bear interest at the highest legal rate from date of said breach.

(Page 1)

Exhibit

A

7. PAYMENT FOR SERVICE: If is shall become necessary for any reason for COMPANY to require the services of an attorney for collection of any moneys due under and pursuant to this Agreement, then and in that event SUBSCRIBER agrees to pay in addition to all moneys due hereunder, a reasonable attorney's fee and all court costs incurred in connection with COMPANY exercising its rights under this Agreement.

8. ASSIGNMENT: This Agreement shall be fully assignable by SUBSCRIBER with (90) ninety days written notice sent via certified mail to COMPANY. Subject to the foregoing, this Agreement shall be binding upon and shall inure to the benefit of the parties and their respective successors, representatives, and assigns.

9. USE OF COMPANY PROGRAM SERVICE: SUBSCRIBER agrees that without the prior written consent of COMPANY, COMPANY PROGRAM SERVICE or signal applicable therefore, shall not be (i) copied, recorded or dubbed for additional replay within or outside Premises, or (ii) be interrupted or supplemented by SUBSCRIBER for the purpose of inserting therein any commercial announcements of which SUBSCRIBER or any other person receives consideration of any kind, or (iii) used to displace a live orchestra as an accompaniment to dancing, skating, or other similar forms of entertainment for which an entry fee is charged. SUBSCRIBER shall not transmit the COMPANY PROGRAM SERVICE nor use the services contained therein outside the Premises as designated in this Agreement.

10. PROGRAM SERVICE FEE: The COMPANY PROGRAM SERVICE Annual Fee covered by this Agreement is based upon today's operating costs. Should copyright costs, programming costs, or costs directly attributable to the delivery of the music service be increased, the COMPANY PROGRAM SERVICE FEE is subject to change. In the event that the COMPANY PROGRAM SERVICE FEE payable hereunder be increased by COMPANY by more than ten (5%) during any one (1) year period, the SUBSCRIBER shall have the right at any time within ten (10) ten days after the date upon which written notice of such increase was mailed by COMPANY to notify COMPANY by certified mail that SUBSCRIBER elects not to accept said increase. Upon receipt of such a notice of election from SUBSCRIBER, COMPANY shall then have the option within thirty (30) days to (1) cancel the increase, (2) limit the increase to (5%) or less, or (3) notify SUBSCRIBER of SUBSCRIBER's right to terminate this Agreement by giving COMPANY seven (7) days written notice by certified mail.

11. ENTIRE AGREEMENT: All representations and promises of every kind are merged into this Agreement which constitutes the entire and only Agreement between the SUBSCRIBER and COMPANY (all prior Agreements, if any, between the parties being superseded hereby) and no modification or failure to enforce any of the provisions thereof shall be valid or deemed a waiver hereof unless made in writing and signed by an officer of COMPANY.

When signed by the SUBSCRIBER and when approved and accepted by the COMPANY this Agreement together with all the terms and conditions herein, which have been read and agreed to by the SUBSCRIBER, shall become an Agreement binding upon the respective parties.

COMMENCEMENT DATE: MARCH 1, 2009

COMPANY: FORSYTH CONSULTING, INC.

BY: _____
     Kevin Forsyth
TITLE: President   DATE: 2/3/09

SUBSCRIBER: ZOE'S KITCHEN, INC.

BY: _____

TITLE: D.O.C.   DATE: 1.4.09

(Page 2)

ADDENDUM A ATTACHED TO
AGREEMENT BETWEEN
ZOE'S KITCHEN, INC.
AND
FORSYTH CONSULTING, INC.
DATED: FEBRUARY 3, 2009

| LOCATIONS TO BE SERVICED: | COMMENCEMENT DATE OF SERVICES PROVIDED: |
| --- | --- |
| Zoe's Kitchen, Inc. 2931 Second Avenue South - Birmingham, AL 35233 | March 1, 2009 |
| Zoe's Kitchen #116 - 2333-A Peachtree Rd. N.E. - Atlanta, GA 30305 | May 1, 2009 |

COMPANY: FORSYTH CONSULTING, INC.

BY: _____

Kevin Forsyth

TITLE: _President_ DATE: _2/3/09_

SUBSCRIBER: ZOE'S KITCHEN, INC.

BY: _____

TITLE: _D.O.C._       DATE: _1.4.09_

(Page 3)

ELECTRONICALLY FILED
10/31/2014 8:36 AM
01-CV-2014-904547.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

# BUTLER | SNOW

March 25, 2014

Exhibit

B

**VIA STANDARD AND CERTIFIED U.S. MAIL
(RETURN RECEIPT REQUESTED) AND BY
E-MAIL:** rachelluther@zoeskitchen.com
Zoe's Kitchen, Inc.
5700 Granite Parkway, Suite 455
Plano, Texas 75024
Attention: Rachel Phillips-Luther, Vice President Marketing

RE:   Forsyth Consulting, Inc.

Dear Ms. Phillips-Luther:

Butler Snow LLP serves as corporate counsel for Forsyth Consulting, Inc. which, as you know, has enjoyed a long and mutually beneficial arrangement with Zoe's Kitchen, Inc. Forsyth and Zoe's are currently parties to that certain Foreground Music Services Agreement dated January 3, 2009, which commenced on March 1, 2009 (the "Agreement"). Forsyth informed us that Zoe's is in breach of the Agreement, which grants Forsyth guaranteed compensation for music services made available to Zoe's restaurants. After reviewing all of the documentation related to this matter, we agree with the client's assessment.

Contrary to your February 3, 2014 e-mail and letter to Forsyth, the Agreement remains in full force and effect until the end of February, 2019 (newly opened stores could have independent terms extending beyond that). Paragraph 4 of the Agreement specifically states that Zoe's can terminate the Agreement only by written notice sent by registered mail no later than ninety (90) days prior to the March 1, 2014 automatic renewal date. Your e-mail did not satisfy the registered mail or timeliness requirements of paragraph 4. Accordingly, Zoe's remains obligated to honor the Agreement for a new 5-year term.

Zoe's has intentionally breached the Agreement in several ways:

1. Paragraph 2 of the Agreement mandates that Zoe's must install Forsyth music services in <u>all</u> Zoe's locations. Zoe's ceased honoring that obligation beginning with Zoe's Kitchen #221 in Ashburn, Virginia, which is scheduled to open this month.

2. Zoe's installed a competitive music service (Ambiance Radio) in a majority of Zoe's existing locations. Forsyth monitored communications between its server and the in-

*One Federal Place, Suite 1000*
*1819 Fifth Avenue North*
*Birmingham, AL 35203*

BRADLEY C. MAYHEW
205.297.2226
brad.mayhew@butlersnow.com

*T 205.297.2200*
*F 205.297.2201*
*www.butlersnow.com*

BUTLER SNOW LLP

BulterSnow 20480878v2

Zoe's Kitchen, Inc.
March 25, 2014
Page 2

store music systems and confirmed that all but 15 AME music systems have been taken off-line by Zoe's.

3.  Your February 3, 2014, e-mail constitutes an anticipatory breach of the remaining term of the Agreement and a mischaracterization of its provisions. Your letter refers to "variable service renewal dates" which you suggest will all occur within the next 10 months (you claim the last such "rollover" date is January 31, 2015). Zoe's cannot cite any provision in the Agreement that supports the abbreviated termination schedule you outlined.

4.  Zoe's failed to notify Forsyth of the assignment of the Agreement to a related entity pursuant to paragraph 8. The Agreement was executed by "Zoe's Kitchen, Inc., an Alabama corporation." The records of the Alabama Secretary of State indicate that this entity was dissolved in 2006 and supplanted by an identically named Delaware corporation formed in 2007. The Delaware corporation did not qualify to conduct business in Alabama until April 14, 2009, which was 3 months after the Agreement was signed. (That begs the question of whether the Delaware entity was unlawfully conducting business in Alabama as an unregistered foreign entity). For purposes of possible future litigation, we ask that you identify the correct party to the Agreement and provide a detailed explanation of any assignment or merger for which notice was required.

5.  Zoe's has several past-due invoices that relate to music services (payable in advance at the beginning of each year during the term), equipment not returned after receipt of replacement music servers, and freight invoices ordered by Zoe's personnel.

6.  Zoe's has failed to execute and return an addendum applicable to new restaurants in accordance with protocol. In fact, Zoe's has ignored all correspondence provided by our client since your purported termination e-mail. This includes a February 4, 2014 response email, and the February 12, 2014 Federal Express package containing the addendum.

We noticed a recent *Birmingham Business Journal* article about the local impact and perception of Zoe's moving its corporate offices from Birmingham to Dallas. Walking away from a commitment with a local service provider like Forsyth certainly does not enhance the company's remaining goodwill in the Birmingham market. In fact, it appears that Zoe's may be taking a slash-and-burn approach to such local relationships as it prepares to go public. Forsyth depends on Zoe's as one of its largest customers, so Zoe's breach could damage my client's business irreparably.

Unless Zoe's reverses course and honors the Agreement, Forsyth is entitled to liquidated damages under paragraph 6 in an amount equal to 75% of the unaccrued payments due under the renewal term. Based on information available to me, I estimate those damages to be

Zoe's Kitchen, Inc.
March 25, 2014
Page 3

approximately $388,800.00 (108 stores x $960 annually x 5 years x 75%). That figure does not take into account liquidated damages for new stores opened during the renewal term. Forsyth will also be entitled to collect attorneys' fees from Zoe's under paragraph 7 of the Agreement.

Notwithstanding these breaches, Forsyth has made it clear that it stands ready to continue the relationship with Zoe's pursuant to the terms and conditions of the Agreement. In order to remedy the breaches, we require Zoe's to implement the following: (a) immediately remove the competitive services installed at all Zoe's locations and reconnect the AME music services; (b) formally acknowledge and re-affirm your commitment under the Agreement for the next 60 months; (c) pay all outstanding invoices to bring Zoe's account current with Forsyth; and (d) reimburse Forsyth for all legal fees incurred to date.

Forsyth wants to resolve this issue with Zoe's amicably and quickly. Please provide written notice prior to April 1, 2014, letting us know if Zoe's plans to cure the breaches as outlined in this letter. We stand ready to file a civil action to enforce Forsyth's rights under the Agreement if we do not hear from you by then. We will also consider filing a tortious interference claim against any Zoe's vendors involved in this matter.

I look forward to hearing from you.

Sincerely,

Bradley C. Mayhew

BCM/jcs
cc:   Kevin Forsyth, President, Forsyth Consulting, Inc.

ELECTRONICALLY FILED
10/31/2014 8:36 AM
01-CV-2014-904547.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

| | |
|---|---|
| **FORSYTH CONSULTING, INC.,**<br>a corporation,<br><br>    *Plaintiff,*<br><br>v.<br><br>**ZOE'S KITCHEN, INC.,** a corporation,<br><br>    *Defendant.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    CIVIL ACTION NO.: _____ |

---

### PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION TO DEFENDANT

---

COMES NOW the Plaintiff in the above-styled cause and hereby requests that Defendant

Zoe's Kitchen, Inc. answer the following interrogatories and respond to the following requests

for production within the time required by Rules 33 and 34 of the Alabama Rules of Civil

Procedure. In addition, Plaintiff requests that Defendant attach a copy of each and every

document referred to in any of Defendant's answers to interrogatories or responses to requests

for production.

<u>INSTRUCTIONS</u>

1.    These interrogatories and requests shall be deemed continuing so as to require the filing of supplemental answers or responses promptly in the event that you or anyone acting on your behalf learns additional facts not set forth in these answers or responses or discovers that information given in these answers and responses is erroneous. Such supplemental answers or responses may be filed from time to time, but no later than thirty (30) days after such further information is received.

2.    Each interrogatory, request and subpart thereof is to be answered separately and as completely as possible. The fact that investigation is continuing or that discovery is not complete shall not be used as an excuse for failure to answer or respond to each interrogatory, request for production and request for admission as fully as possible. The omission of any name, fact, or other item of information from the answers or responses shall be deemed a representation that such name, fact or item was not known to you or anyone acting on your behalf at the time of service of the answers and responses.

3.      All interrogatories listed herein relating to verbal communications are intended.  It is requested that the answers to each of these interrogatories set forth whether the verbal communication was by telephone or face to face or through some indirect means such as message, answering machine, or electronic mail.  It is requested that each answer include the names, present business and residence addresses, telephone and fax numbers, business positions, and occupations of the parties involved in the communications, as well as of any other persons present during the communications.

4.      If you choose to answer an interrogatory by producing documents and/or electronically stored information ("ESI"), clearly indicate to which interrogatory and subparagraph to which the documents and/or ESI are responsive.  If you have already produced documents and/or ESI that are responsive to an interrogatory, describe the documents and/or ESI and the interrogatory and subparagraph to which they respond.

5.      If you cannot answer or respond to any portion of any of the following interrogatories or requests in full, after exercising due diligence to secure the information to do so, so state, and answer or respond to the extent possible, specifying your inability to answer the remainder, and stating whatever information or knowledge you have that relates to the unanswered portions.

6.      If you claim privilege as a ground for failing to answer any interrogatory or respond to any request, respond to that part of each such interrogatory or request that, in your view, does not contain allegedly privileged communications.  For each interrogatory or request, or portion thereof, for which you claim a privilege, describe the factual basis for your claim of privilege in sufficient detail to permit adjudication of the validity of that claim, including without limitation, the following: (a) a brief description of the type of document or communication; (b) the date of the document or communication; (c) the name, title and job description of the transmitter of the document or communication; (d) the name, title and job description of the person to whom the document or communication was addressed; (e) the name, title and job description of each person who has received or had access to the document or communication; (f) a brief description of the subject matter of the document or communication; and (g) the nature of the privilege claimed.  This is a written request for a privilege log pursuant to Ala. R. Civ. P. 26(b)(6)(A).

7.      If you at any time had possession or control of a document and/or ESI responsive to these interrogatories and requests, but such document and/or ESI has been lost, destroyed, purged or is not presently in your possession or control, then: (a) identify the document and/or ESI; (b) state the date of its loss, destruction, purge or separation from your possession or control; (c) state the circumstances surrounding its loss, destruction, purge or separation from your possession or control; and (d) state its present or last known location, including the name, address and telephone number of each person believed to have possession of such document and/or ESI.

8.      In producing documents responsive to these interrogatories and requests, you are requested to (a) "Bates stamp" or otherwise mark all documents produced and (b) use the space

provided after each Interrogatory or Request for Production to identify by "Bates number" or other mark which documents are being produced in response to the request.

9.    If a document is stored in electronic form, you should produce the document either in its native format or in searchable PDF format, whichever you prefer, provided, however, that if the document is in the form of a database, such as Excel, the document should be produced in its native format.  If the document is kept only on paper, you should produce the document in searchable PDF format.

10.    In producing electronically stored information responsive to these interrogatories and requests, you are requested to produce such information in the form(s) in which it is (a) ordinarily maintained; (b) reasonably usable or (c) specified by party agreement and/or court order.

11.    Unless the text clearly requires otherwise: (a) the singular form of a word shall include the plural and vice versa; (b) the conjunctive "and" shall include the disjunctive "or" and vice versa; (c) all pronouns shall apply to the male, female and neutral genders; and (d) the word "any" shall include the word "all" and vice versa.

12.    You are requested to furnish all information in your possession and all information available to you, not merely such information as is of your own personal knowledge but also all knowledge that is available to **Zoe's Kitchen, Inc.** through its employees, officers, directors, and agents by reasonable inquiry, including inquiry of their representatives and attorneys.

## DEFINITIONS

As used herein, the words and phrases set out below shall have the following meaning or meanings prescribed for them:

1.    The terms "Defendant," "Zoës Kitchen," "Zoës," "you," and "your," unless otherwise specified, refer to **Zoe's Kitchen, Inc.**, its parent corporation, its subsidiaries, successors, predecessors, its present and former officers, executives, directors, agents and employees and all other persons acting or purporting to act on behalf of said Defendant.

2.    The terms "Plaintiff" and "Forsyth" mean Plaintiff Forsyth Consulting, Inc. and any agents, representatives, or other persons acting on behalf of or representing Forsyth Consulting, Inc.

3.    The terms "action," "cause," and "suit" mean all proceedings arising out of, ensuing from, or in any way relating to the above-styled lawsuit.

4.    The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise). "Communication" includes, without limitation, proof of fax (if the communication was by fax), hard copies of e-mails or other computer generated

transmissions of information or documents, and proof of mailing (if the communication was by standard mail).

5.     The term "document" is defined herein to be synonymous in meaning and equal in scope to the usage of this term in its broadest possible sense as set forth in Rule 34 of the Alabama Rules of Civil Procedure, and shall mean and include all of the following, whether written, handwritten, printed, electronically mailed, stenographically recorded, transcribed, punched, videotaped, audiotaped, or otherwise recorded on film, microfilm, microfiche, computer disks or diskettes, computer memory, electronically stored, however and by whomever produced, prepared, reproduced, made, or disseminated, of every type and description that is or has been in your possession, custody or control, or of which you have knowledge or that are known by you to exist, and that can be located or discovered by reasonably diligent efforts, including, but not limited to: correspondence, letters, e-mails, narratives, facsimiles, telecopy coversheets, telegrams, telexes, messages, records, reports, publications, bulletins, books, brochures, pamphlets, circulars, summaries or other records, notes of personal conversations, minutes or summaries or other records of telephone conversations or interviews, logs of telephone calls, message logs, summaries or other records of meetings and conferences, summaries or other records of negotiations, other summaries, minutes of meetings, diaries, diary entries, appointment books, calendars, time records, instructions, work assignments, visitor records, forecasts, statistical statements, financial statements, tax returns, schedules, and income-reporting forms, earnings statements, receipts, work sheets, work papers, graph, maps, plats, charts, drawings, tables, books of accounts, accounting records, schedules, ledgers, audits, loan files, contracts, agreements, security agreements, analytical records, corporate data sheets, consultants' reports, leases, deeds, conveyances, bills of sale, promissory notes, loan documents, pledges, collateral agreements, real estate closing binders, expert reports, witness statements, appraisals, trade letters, press releases, notes, notices, marginal notations, notebooks, telephone bills or records, bills, statements, records of obligations and expenditure, invoices, lists, journals, advertisements or advertising copy, recommendations, files, printouts, compilations, tabulations, purchase orders, receipts, sale orders, confirmations, records of bank deposits, checks, canceled checks, bank statements, letters of credit, vouchers, analyses, studies, surveys, transcripts of hearings, transcripts of testimony, expense reports, articles, speeches, computer records and data (translated or converted, if necessary, by you through detection or conversion devices or programs into a reasonably usable form), computer programs, data compilations (including matter used in data processing), indices, drafts, working/discussion copies, revisions or amendments. Such documents include drafts and non-identical copies, whether different from the original because of any alterations, notes, comments, or other material contained thereon or attached thereto, as well as any documents, portions of which contain information responsive to any request herein. A draft or non-identical copy is a separate document within the meaning of this term.

6.     The term "electronically stored information" is defined herein to be synonymous in meaning and equal in scope to the usage of this term in its broadest possible sense as set forth in Rule 34 of the Alabama Rules of Civil Procedure, and shall mean and include information created, manipulated, communicated, stored and utilized in digital form, including but not limited to writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations.

4

7.   The term "identify" (with respect to a document), means to set forth the:

   a.   type of document;

   b.   general subject matter of the document;

   c.   date, author and recipient of the document;

   d.   all addressee(s) and the address(es) to whom the document was sent (if any);

   e.   the name of the present custodian of the document;

   f.   the address of the present whereabouts of the document; and

   g.   a complete listing of any document or recording which was attached to, referred to or was the subject matter of said document.

8.   The term "identify" (with respect to an event) means to set forth the:

   a.   date of the event;

   b.   time of the event;

   c.   the location where the event occurred;

   d.   the individuals present;

   e.   what occurred; and

   f.   what was said by the individuals involved.

9.   The term "identify" (with respect to persons) means to set forth:

   a.   the person's full name;

   b.   present or last known address; and, additionally, with respect to a natural person:

   c.   job description and scope of authority, and

   d.   the present or last known place of employment.

5

Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent interrogatories requesting the identification of that person.

10.     The term "person" means any natural person or any business, legal or governmental entity or association.

11.     The terms "record" or "recording", whether used in the singular or plural, shall be used herein in its broadest sense and shall include any original, reproduction, or copy of any kind of visual or audio information, including, without limitation, audio tapes, video tapes, compact discs, video discs, computer discs, computer tapes, motion picture film or any other means or mechanism for the preservation of visual or audio information.

12.     The terms "relate to," "relating to" and "related to" means connected in thought or meaning, respecting, regarding, concerning, belonging to, pertaining to, supporting, contradicting, or bearing on, whether directly or indirectly.

13.     The term "foreground music" means business music that is often found in restaurants/eateries and designed to be enjoyed by the customer during his dining experience.

14.     The term "relevant time period" means from January 2009 to the present date.

15.     The term "Ambiance Radio" unless otherwise specified, refers to Ambiance Radio, its parent corporation, its subsidiaries, successors, predecessors, its present and former officers, executives, directors, agents and employees and all other persons acting or purporting to act on behalf of Ambiance Radio.

## INTERROGATORIES

1.     Please state the name, address, title and duty of the person or persons who answered or assisted in answering these interrogatories and identify each document reviewed and/or person consulted.

        **ANSWER:**

2.     Please describe, in detail, any and all meetings that Defendant, or any of Defendant's present and former officers, executives, directors, agents or employees, attended during the relevant time period regarding the Plaintiff and foreground music service at Zoës locations.

        **ANSWER:**

3.     Please describe, in detail, any and all meetings that Defendant, or any of Defendant's present and former officers, executives, directors, agents or employees, attended during the relevant time period regarding other foreground music service vendors and foreground music service at Zoës locations.

**ANSWER:**

4.     Please list the name of each foreground music service vendor that Defendant has entered into an agreement with during the past seven (7) years.  For each vendor, please identify the following information:

     a.     The date Defendant and vendor entered into a foreground music service agreement;

     b.     The date said agreement terminated;

     c.     The nature of the termination.

**ANSWER:**

5.     Please list the name of each and every foreground music service vendor that submitted a proposal, bid, quote or other similar information to Defendant during the relevant time period, particularly 2013.

**ANSWER:**

6.     Please describe the nature of any and all past and present relationships (personal and professional) between Defendant's present and former officers, executives, directors, agents or employees and Ambiance Radio's present and former officers, executives, directors, agents or employees.

**ANSWER:**

7.     Please identify when Defendant and Ambiance Radio began communicating about Ambiance Radio providing Defendant with foreground music service.

**ANSWER:**

8.     Please identify the date on which the first Ambiance Radio receiver was installed in a Zoës location(s) and the address of said location(s).

**ANSWER:**

9.     Please identify the date on which the first American Music Environments ("AME") receiver(s) operated by Plaintiff were disconnected and the address of the Zoës locations where said receiver(s) were located.

**ANSWER:**

10.     Please identify the type of research conducted by Defendant, or at Defendant's direction, regarding music that is scientifically programmed to trigger positive emotional response in the limbic brain, as well as the material examined, including but not limited to any articles, journals, studies (university and/or private), textbooks, websites or other research sources.

**ANSWER:**

11.     Please list the style, civil action number and location of any lawsuits (past or present) ever filed against the Defendant claiming breach of contract.

**ANSWER:**

12.     Please state the full name and address of every witness known to you, or to your attorney(s), who has any knowledge regarding the facts and circumstances surrounding the happening of the events referred to in the Complaint.

**ANSWER:**

13.     Please state the full name and address of each witness that you expect to call at the trial of this case.

8

**ANSWER:**

14.　Please state the name and address of each expert witness that you expect to call at the trial of this case and state the subject matter on which said experts are expected to testify.

**ANSWER:**

15.　Please state the substance of the facts, opinions and conclusions to which each and every expert is expected to testify in this case.

**ANSWER:**

16.　Please identify each and every communication (*i.e.*, e-mail, memorandum, note, etc.) sent by Defendant to Plaintiff in an attempt to terminate the contract made the basis of this lawsuit.

**ANSWER:**

17.　Do you understand that these interrogatories are being answered under oath?

**ANSWER:**

## REQUESTS FOR PRODUCTION

1.　Please produce a copy of any and all documents evidencing any communications Defendant, or any of Defendant's present and former officers, executives, directors, agents or employees, had with Plaintiff, at any point during the relevant time period, including but not limited to any and all e-mail correspondence to/from Rachel Phillips-Luther, Jason Morgan, Kevin Miles and Greg Dollarhyde.

**RESPONSE:**

2.　Please produce a copy of any and all documents evidencing any communications that Defendant's present and former officers, executives, directors, agents or employees had with each other, regarding foreground music service, Plaintiff and/or Ambiance Radio, at any point

during the relevant time period, including but not limited to any and all e-mail correspondence to/from Rachel Phillips-Luther, Jason Morgan, Kevin Miles and Greg Dollarhyde.

      **RESPONSE:**

3.     Please produce a copy of any and all documents evidencing any communications Defendant, or any of Defendant's present and former officers, executives, directors, agents or employees, had with other foreground music service vendors, at any point prior to January 2009, including but not limited to any and all correspondence (e-mail or otherwise) between Defendant and Muzak, Muzak Holdings and/or Muzak franchisees.

      **RESPONSE:**

4.     Please produce a copy of any and all documents evidencing any communications Defendant, or any of Defendant's present and former officers, executives, directors, agents or employees, had with other foreground music service vendors, at any point during the relevant time period, including but not limited to any and all correspondence (e-mail or otherwise) between Defendant and Ambiance Radio.

      **RESPONSE:**

5.     Please produce a copy of the Foreground Music Services Agreement entered into between the parties on January 3, 2009, as well as a copy of any and all addendums to the Agreement, quotes, statements, invoices and other documents related to the foreground music service that Plaintiff provided to Defendant pursuant to the terms of the Agreement.

      **RESPONSE:**

6.     Please produce a copy of any other foreground music service agreements that Defendant was a party to during the past seven (7) years, as well as a copy of any and all

addendums to said agreements, quotes, statements, invoices and other documents related to the foreground music services provided to Defendant pursuant to the terms of the agreements.

       **RESPONSE:**

    7.    Please produce a copy of the foreground music service agreement that Defendant is currently a party to, as well as a copy of any and all addendums to said agreement, quotes, statements, invoices and other documents related to the foreground music service provided to Defendant pursuant to the terms of the agreement.

       **RESPONSE:**

    8.    Please produce a copy of each and every construction status report that Defendant issued to its vendors during the relevant time period.

       **RESPONSE:**

    9.    Please produce a copy of any and all documents evidencing any communications that Defendant's present and former officers, executives, directors, agents or employees had with each other and/or Ambiance Radio, regarding the initial installation of Ambiance Radio receivers in Zoës locations.

       **RESPONSE:**

    10.    Please produce a copy of any and all documents evidencing any communications that Defendant's present and former officers, executives, directors, agents or employees had with each other, regarding the intentional disconnection of AME receivers operated by Plaintiff.

       **RESPONSE:**

    11.    Please produce a copy of any and all research material gathered and/or reviewed by the Defendant, or in the Defendant's possession, regarding music that is scientifically programmed to trigger positive emotional response in the limbic brain.

**RESPONSE:**

12.    Please produce each and every investigative document, memorandum and report made by or for the Defendants or in the Defendant's possession, pertaining to or addressing in any way the occurrence made the basis of this lawsuit.

**RESPONSE:**

13.    Please produce a copy of any and all e-mails, memoranda or other written documents of any type, documenting any notes or comments that Rachel Phillips-Luther made at any point regarding her communications with Plaintiff between August 2013 and February 2014.

**RESPONSE:**

14.    Please produce a copy of each and every internal communication (*i.e.*, e-mail, memorandum, note, etc.) made by the Defendant, or in the Defendant's possession, regarding the occurrence made the basis of this lawsuit.

**RESPONSE:**

15.    Please produce a copy of each and every communication (*i.e.*, e-mail, memorandum, note, etc.) made by Defendant to Plaintiff, regarding Defendant's attempt to terminate the contract made the basis of this lawsuit.

**RESPONSE:**

16.    Please produce a copy of any and all resumes, CVs or similar documents setting forth the educational background and qualifications of each and every expert witness that you expect to testify at the trial of this case.

**RESPONSE:**

17.     Please produce a copy of any and all documents, standards, treatises, notes, statements, writings or any other document upon which your expert, if any, is expected to rely upon in forming his opinion.

**RESPONSE:**

18.     Please produce a copy of any and all correspondence between Zoës and any person, firm or corporation, other than your attorney(s), that in any way relates to the occurrence made the basis of this lawsuit.

**RESPONSE:**

19.     Please produce a copy of any and all rules, regulations, guidelines, or other authoritative materials upon which you have consulted or intend to rely upon in the defense of this lawsuit.

**RESPONSE:**

20.     Please produce a copy of any and all documents that refer to or pertain to the cause of the occurrence made the basis of this lawsuit.

**RESPONSE:**

Respectfully submitted,

*/s/ Michael K. Beard*
Michael K. Beard (BEA004)
*/s/ Jane F. Mauzy*
Jane F. Mauzy (MAU017)
MARSH, RICKARD & BRYAN, P.C.
800 Shades Creek Parkway
Suite 600-D
Birmingham, Alabama 35209
Telephone:     (205) 879-1981
Facsimile:      (205) 879-1986
E-mail:          mbeard@mrblaw.com
                    jmauzy@mrblaw.com

*Attorneys for Plaintiff Forsyth Consulting, Inc.*

13

14

| State of Alabama<br>Unified Judicial System<br><br>Form C-34   Rev 6/88 | SUMMONS<br>- CIVIL - | Case Number:<br>01-CV-2014-904547.00 |
|---|---|---|

IN THE CIRCUIT COURT OF JEFFERSON COUNTY
FORSYTH CONSULTING, INC. V. ZOE'S KITCHEN, INC. (ZOE'S KITCHEN)

NOTICE TO    ZOE'S KITCHEN, INC. (ZOE'S KITCHEN), C/O CT CORPORATION SYSTEM 1999 BRYAN STR., STE 900, DALLAS, TX 75201

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE OPPOSING PARTY'S ATTORNEY MICHAEL KEVIN BEARD

WHOSE ADDRESS IS 800 SHADES CREEK PARKWAY, SUITE 600-D, BIRMINGHAM, AL 35209

THE ANSWER MUST BE MAILED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

TO ANY SHERIFF OR ANY PERSONNEL AUTHORIZED by the Alabama Rules of the Civil Procedure:

☐ You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant

☑ Service by certified mail of this summons is initiated upon the written request of    FORSYTH CONSULTING, INC.
pursuant to the Alabama Rules of the Civil Procedure

Date   10/31/2014 8:36:11 AM    /s/ ANNE-MARIE ADAMS

Clerk/Register

JEFFERSON COUNTY, ALABAMA

716 N. RICHARD ARRINGTON BLVD.
BIRMINGHAM, AL 35203

☑ Certified Mail is hereby requested    /s/ MICHAEL KEVIN BEARD

Plaintiff's/Attorney's Signature

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on _____

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____

_____ in _____ County, Alabama on _____
(Date)

_____
Date

_____
Server's Signature

_____
Address of Server

_____
Type of Server

_____
Server's Printed Name

_____
Phone Number of Server



# NOTICE TO CLERK

REQUIREMENTS FOR COMPLETING SERVICE BY
CERTIFIED MAIL OR FIRST CLASS MAIL

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA
FORSYTH CONSULTING, INC. V. ZOE'S KITCHEN, INC. (ZOE'S KITCHEN)

01-CV-2014-904547.00

To: CLERK BIRMINGHAM
clerk.birmingham@alacourt.gov

TOTAL POSTAGE PAID: $8.03

Parties to be served by Certified Mail - Return Receipt Requested

ZOE'S KITCHEN, INC. (ZOE'S KITCHEN)                        Postage: $8.03
C/O CT CORPORATION SYSTEM
1999 BRYAN STR., STE 900
DALLAS, TX 75201

Parties to be served by Certified Mail - Restricted Delivery - Return Receipt Requested

Parties to be served by First Class Mail

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

# OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | CV-2014-904547 |
| Return Receipt Fee (Endorsement Required) | S/C |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Sent To  Zoe's Kitchen, Inc

Street, Apt. No.; or PO Box No.

City, State, ZIP+4

7014 1200 0001 8766 7598

PS Form 3800, August 2006          See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

ZOE'S KITCHEN, INC. (ZOE'S KITCHEN)
C/O CT CORPORATION SYSTEM
1999 BRYAN STR., STE 900
DALLAS, TX 75201

CV-2014-904547   S/C

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X
☐ Agent
☐ Addressee

B. Received by (Printed Name)          C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☑ Certified Mail®        ☐ Priority Mail Express™
☐ Registered             ☑ Return Receipt for Merchandise
☐ Insured Mail           ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)  ☐ Yes

2. Article Number
(Transfer from service label)    7014 1200 0001 8766 7598

PS Form 3811, July 2013          Domestic Return Receipt

## SENDER: COMPLETE THIS SECTION

■ Complete items 1, 2, and 3. Also complete
   item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
   so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
   or on the front if space permits.

1. Article Addressed to:

ZOE'S KITCHEN, INC. (ZOE'S KITCHEN)

C/O CT CORPORATION SYSTEM

1999 BRYAN STR., STE 900

DALLAS, TX 75201

## COMPLETE THIS SECTION ON DELIVERY

A. Signature

X _____    ☐ Agent
                            ☐ Addressee

B. Received by (Printed Name)      C. Date of Delivery
   Chris Wells                     NOV 0 6 2014

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☒ Certified Mail®        ☐ Priority Mail Express™
   ☐ Registered             ☒ Return Receipt for Merchandise
   ☐ Insured Mail           ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)          ☐ Yes

01-2014-904547  s/c

2. Article Number
   (Transfer from service label)       7014 1200 0001 8766 7598

PS Form 3811, July 2013          Domestic Return Receipt

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

FILED IN OFFICE
CIRCUIT CIVIL DIVISION

NOV 10 2014

ANNE-MARIE ADAMS
CLERK

• Sender: Please print your name, address, and ZIP+4® in this box•

ANNE-MARIE ADAMS, CLERK
ROOM 400 JEFF. CO. COURTHOUSE
716 RICHARD ARRINGTON JR BLVD, NO.
BIRMINGHAM, ALABAMA  35203



AlaFile E-Notice

01-CV-2014-904547.00

Judge: JIM HUGHEY III

To:  BEARD MICHAEL KEVIN
      mbeard@mrblaw.com

# NOTICE OF SERVICE

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

FORSYTH CONSULTING, INC. V. ZOE'S KITCHEN, INC. (ZOE'S KITCHEN)
01-CV-2014-904547.00

The following matter was served on 11/6/2014

D001 ZOE'S KITCHEN, INC. (ZOE'S KITCHEN)

CERTIFIED MAIL

S/C

ANNE-MARIE ADAMS
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
716 N. RICHARD ARRINGTON BLVD.
BIRMINGHAM, AL 35203

205-325-5355
anne-marie.adams@alacourt.gov



AlaFile E-Notice

01-CV-2014-904547.00

Judge: JIM HUGHEY III

To:  MAUZY JANE FULTON
     jmauzy@mrblaw.com

---

# NOTICE OF SERVICE

---

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

FORSYTH CONSULTING, INC. V. ZOE'S KITCHEN, INC. (ZOE'S KITCHEN)
01-CV-2014-904547.00

The following matter was served on 11/6/2014

D001 ZOE'S KITCHEN, INC. (ZOE'S KITCHEN)

CERTIFIED MAIL

S/C

ANNE-MARIE ADAMS
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
716 N. RICHARD ARRINGTON BLVD.
BIRMINGHAM, AL 35203

205-325-5355
anne-marie.adams@alacourt.gov